IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WANDA L. MALITZ,

               Plaintiff,                           No. 01:13-cv-02003-HZ

      v.

CAROLYN W. COLVIN, Acting              OPINION & ORDER
Commissioner of Social Security,

               Defendant.

Phillip W. Studenberg
Attorney at Law
230 Main Street
Klamath Falls, Oregon 97601

       Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

1 - OPINION & ORDER

Heather L. Griffith
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorney for Defendant

HERNANDEZ, District Judge:

     Plaintiff Wanda Malitz brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits (DIB).  This Court has jurisdiction pursuant to

42 U.S.C. § 405(g).  I affirm the Commissioner's decision.

PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on September 28, 2009, alleging an onset date of January 31,

2002.  Tr. 160-66.  Her application was denied initially and on reconsideration.  Tr. 78-81, 84-86.

     On January 19, 2012, Plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ).  Tr. 32-38.  The hearing was rescheduled because the ALJ

determined he wanted the testimony of a medical expert psychologist.  Tr. 36.  On May 8, 2012,

Plaintiff appeared, with counsel, for the rescheduled hearing before the ALJ.  Tr. 39-72.  On June

6, 2012, the ALJ found Plaintiff not disabled.  Tr. 13-31.  The Appeals Council denied review.

Tr. 1-6.

FACTUAL BACKGROUND

     Plaintiff alleges disability based on being bipolar and manic depressive, as well as having

panic attacks and bad headaches.  Tr. 216.  She also indicated that she "pass[es] out."  Id.  At the

time of the May 8, 2012 hearing, she was forty-three years old.  Tr. 62.  She has two years of

2 - OPINION & ORDER

college with an associate's degree in business.  Tr. 58.  Because the parties are familiar with the

medical and other evidence of record, I refer to any additional relevant facts necessary to my

decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through her date of last insured of December 31, 2009. Tr. 18-19. Next, at step two, the ALJ determined that Plaintiff has the following medically determinable impairments, but that none of them are severe, either singly or in combination: (1) morbid obesity; (2) hypothyroidism; (3) hypertension; (4) mood disorder, NOS, with bipolar features; (5) post-traumatic stress disorder (PTSD); (6) psychological reaction to physical sensation; and (7) borderline personality disorder. Tr. 19-20.

Having found that Plaintiff had no severe impairments at step two, the ALJ could have concluded his decision at that point. However, the ALJ made alternative findings for the remainder of the sequential evaluation process. He assessed Plaintiff with the following RFC: she can perform light work as defined in 20 C.F.R. § 404.1567(b), except she cannot frequently bend, stoop, squat, or kneel due to her obesity exacerbating her other physical impairments, and

she is unable to work with the public.  Tr. 26.  With this RFC, the ALJ determined that Plaintiff

would be able to perform jobs that exist in significant numbers in the economy such as

housekeeping cleaner, sewing machine operator, and paint spray inspector.  Tr. 27.  Thus, the

ALJ determined that Plaintiff is not disabled.  Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal

quotation marks omitted).  The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v.

Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591

(internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149,

1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff appears to raise several issues regarding the ALJ's decision, but her opening

memorandum so poorly identifies and articulates her arguments that Defendant contends she has

waived them.  Although I agree with Defendant that Plaintiff raises several contentions without

explaining her reasoning[1], Defendant has alternatively attempted to identify the arguments with more specificity than Plaintiff has, and I prefer to address the arguments on their merits as best as I can discern them.

I.  Consultative Examination

At the first hearing, the ALJ stated that he was going to reschedule the hearing to allow a psychological medical expert to testify.  Tr. 36.  Plaintiff's then-representative asked if the ALJ wanted a psychological consultative examination because there was no consultative examination in the record.  Tr. 37.  The ALJ inquired if Plaintiff's representative was asking that Plaintiff be seen by a psychiatrist.  Id.  The representative responded no, but then stated that she was used to seeing a consultative examination in the exhibits and was not sure if that was something the ALJ would "entertain."  Id.  The ALJ stated that he would "entertain anything and everything."  Id. The discussion concluded with the ALJ indicating he would order a consultative examination with a psychiatrist and when the report came back, he would reschedule the hearing with a medical expert psychologist ready to testify.  Tr. 37-38.

At the second hearing, the ALJ stated he had sent out the request for a consultative exam, but Plaintiff stated she had never received it.  Tr. 42-43.  The ALJ proceeded with the hearing anyway, indicating that the consultative exam would have occurred after Plaintiff's last insured date in any event.  Tr. 44-45.  In his written decision, the ALJ determined that a consultative examination was not necessary to complete the record because the examiner's opinion would have addressed Plaintiff's current level of functioning in 2012, and would not have been

---

[1]  Furthermore, although Plaintiff had the opportunity to file a reply memorandum, she did not do so.

probative of her level of functioning before her last insured date of December 31, 2009.  Tr. 16.

Plaintiff appears to argue that the ALJ's failure to order the consultative examination was error.  Pl.'s Op. Brief at 2.  But, she misstates the facts, and the law does not support her position. First, she states that the ALJ stated on the record that he needed an additional psychological consultative examination in order to come to a decision.  My review of the hearing transcript, which is outlined above, shows that this is not the case.  Plaintiff's representative brought up the issue and the ALJ did not conclude the exam was necessary, only that he was willing to "entertain" the exam.

Second, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massinari, 276 F.3d 453, 459-60 (9th Cir. 2001).  Here, the ALJ determined that the best way to develop the record was to obtain testimony from a psychological expert who had reviewed Plaintiff's medical records and could offer an opinion regarding her impairments for the relevant time period.  The ALJ's determination was reasonable given that the consultative examination would have occurred more than two years after Plaintiff's date of last insured. Plaintiff fails to show that the record, as developed, was inadequate.

II.  Plaintiff's Credibility

The ALJ found Plaintiff not credible for several reasons.  Tr. 21-23.  The ALJ noted that the record revealed a lack of the kind of treatment to be expected given her allegation that her impairments were severe.  Tr. 22.  For example, there was no evidence of hospitalizations, surgeries, physical therapy, or referrals to specialists for her alleged physical impairments.  Id. As for her mental impairments, the only treatment appeared to be medication from primary care

providers and no evidence of a referral to a psychiatrist.  Id.  Additionally, the ALJ noted that

Plaintiff had significant gaps in treatment before her December 31, 2009 date of last insured.  Id.

There was no evidence of treatment for any conditions before March 2004, followed by nearly

two years of no apparent treatment and limited evidence of treatment in the year before the

December 31, 2009 last insured date.  Id.

      The ALJ next noted that Plaintiff had inconsistently reported her symptoms.  Id.  He gave

examples of a March 2004 complaint of arthralgias but no headaches, numbness, or tingling, yet

in her October 2009 disability report submitted as part of her DIB application, she alleged that

"really bad headaches," but no other physical complaints, prevented her from working.  Id.  Then,

she reported she has "off and on" pain in her head, feet, knees, and back.  Id.  Additionally, he

noted that Plaintiff had inconsistently reported that she has difficulty sitting but that sitting makes

her pain better.  Id.  Based on these inconsistencies, the ALJ determined that some of Plaintiff's

symptoms were due to "transient life stressors" and not an exacerbation of the symptoms of her

impairments.  Id.

      The ALJ then found that Plaintiff's activities were inconsistent with her allegations of

being severely impaired.  Id.  He noted her report to a nurse that she was always "on the go" for

at least six hours of the day, she took care of her husband and two children, she prepared meals

and took the children to school, she went outside every day, she went shopping for groceries and

household items in stores, she took care of household pets, and she performed house and yard

work as needed.  Tr. 22-23.  The ALJ stated that she spent significant amounts of time

throughout the day "playing" with her computer.  The ALJ concluded that Plaintiff's "activities

indicate physical and mental capabilities that exceed her claimed limitations."  Tr. 23.

Finally, the ALJ determined that Plaintiff's credibility was undermined because of evidence that she exaggerated her impairments as part of her application for social security benefits. Id. She apparently reported in a "good cause statement" regarding a late request for reconsideration, that she had been diagnosed with malignant thyroid cancer in March 2010. Id. However, the medical record did not support her allegation and an April 2010 progress note from her primary care provider stated that she had been diagnosed with unspecified hypothyroidism. Id.

The ALJ is responsible for determining credibility. Vasquez, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'").

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. Id.; see also Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many

factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

The only challenge Plaintiff makes is that the ALJ failed to consider her inability to afford treatment. Pl.'s Op. Brief at 4. Although the hearing testimony does not reveal that Plaintiff affirmatively stated that she failed to obtain treatment because she could not afford it, I assume the truth of her present representation and find that the ALJ should not have considered her failure to seek treatment in assessing her credibility.

Nonetheless, the ALJ did not err in concluding that Plaintiff lacked credibility. As detailed above, the ALJ gave several other reasons for finding Plaintiff not credible and Plaintiff appears to challenge none of them. Moreover, the evidence in the record supports the ALJ's determinations. Thus, even absent the finding that Plaintiff failed to seek treatment, the ALJ's credibility determination is supported by substantial evidence and any error is harmless. See Batson v. Comm'r, 359 F.3d 1190, 1197 (9th Cir. 2004).

III.  Errors During the Second Hearing

Joseph Malancharuvil, Ph.D., testified at the second hearing as the psychological medical expert. Tr. 46-56. Plaintiff suggests that he made statements during the hearing that were not understandable due to his heavy accent and because English is his second language. Pl.'s Op. Brief at 2. She states that this is reflected in the transcript of the second hearing. Id.

Plaintiff fails to provide a citation to a particular part of the transcript. She also fails to

make an argument as to how any testimony by Dr. Malancharuvil which allegedly could not be understood, caused the ALJ to make an error.  Regardless, the transcript fails to support Plaintiff's argument.  There is no indication in the transcript that Dr. Malancharuvil was difficult to understand or that Plaintiff, her representative, or the ALJ asked him to repeat or clarify any statements.  This argument is without merit.

Plaintiff also comments that some of the ALJ's questioning amounted to "bullying" which was traumatizing to her because it related to pornography.  She implies that the questioning was not relevant and was simply of prurient interest to the ALJ.  Pl.'s Op. Brief at 3.  Plaintiff does not, however, argue that the ALJ was biased or point to any specific basis to support such an argument.

The record shows that in March 2010, Julie Ryder, PNP, of Klamath Open Door Family Practice, saw Plaintiff.  Tr. 399-401.  Ryder wrote in her summary that Plaintiff had "been 'doing phone sex for money'" and had sent photos of herself to "Voluptuous" magazine where she had an audition for a nude photo shoot set for May.  Tr. 400.  As part of his expert testimony, Dr. Malancharuvil remarked that the record showed that Plaintiff had engaged in some activities "for making money" including "doing sex on the phone for money" as well as another "pornographic undertaking[,]" presumably referring to the nude photos.  Tr. 48.  Later, the ALJ questioned Dr. Malancharuvil regarding an earlier diagnosis for Plaintiff of obsessive compulsive sex disorder. Tr. 50.  The ALJ asked the expert if the record showed that Plaintiff satisfied the criteria for the category of nymphomania.  Id.  In response, Dr. Malancharuvil explained that because of her prior sexual abuse, Plaintiff developed a propensity for sexual encounters.  Id.  He also noted that she was using sexual activities as a source of income, but opined that she did not fit the

11 - OPINION & ORDER

nymphomania diagnosis.  Tr. 50-51.

In follow-up questions directed to Plaintiff, the ALJ inquired if she earned money from engaging in pornography, to which Plaintiff responded she no longer engaged in that conduct. Tr. 52.  She stated that it ended in December 2009.  Id.  Subsequently, Plaintiff's counsel himself asked Plaintiff about the "internet sex stuff," prompting Plaintiff to explain that she gave up on it because she felt bad about doing it.  Tr. 60.

Finally, in questioning her about her work history, the ALJ noted that one employer was listed as "Event Imaging Solutions Incorporated."  Tr. 64.  In response to the ALJ's inquiry regarding what type of work that was, Plaintiff stated it was "taking pictures for the Easter Bunny and for Santa Claus."  Id.  The ALJ asked if those were any kind of pictures that she took while she was undressed.  Id.  Plaintiff responded no.  Id.  The ALJ asked for clarification of what the job was.  Id.  Plaintiff responded that she was photographing little children with Santa Claus and the Easter Bunny.  Id.

The ALJ based his questioning on references in the record.  Although Plaintiff suggests that the inquiry was not relevant because the reference to "phone sex" was in a March 2010 record and her date of last insured was December 31, 2009, the record shows that the period of time she engaged in the activity was before her date of last insured.  Tr. 52 (Plaintiff's testimony that this conduct ceased in December 2009).  The facts were relevant to determining her work history, her particular diagnosis, and her residual functional capacity.  Thus, the ALJ was properly fulfilling his administrative duty to "conscientiously probe into, inquire of, and explore for all the relevant facts."  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (internal quotation marks omitted).

12 - OPINION & ORDER

The court presumes that the ALJ was unbiased.  Bayliss v. Barnhart, 427 F.3d 1211, 1215 (9th Cir. 2005).  Plaintiff fails to rebut this presumption.

IV.  Assessment of Medical and Lay Witness Opinions

A.  Dr. Malancharuvil

Plaintiff appears to contend that Dr. Malancharuvil's testimony was unreliable in some way, but she also appears to contend that the ALJ improperly rejected that testimony.  First, she remarks on Dr. Malancharuvil's testimony regarding the various impairments he considered in evaluating Plaintiff's symptoms.  Pl.'s Op. Brief at 2-3.  Dr. Malancharuvil testified that she has a condition under Listed Impairment 12.04 which he referred to as a "mood disorder not otherwise specified.  It's bipolar three."  Tr. 47.  He also indicated that she had conditions under 12.06, 12.07, and 12.08.  Id.

Plaintiff notes that the Diagnostic and Statistical Manual (DSM) does not include a "bipolar three."  Pl.'s Op. Brief at 2.  But, she fails to articulate any kind of argument that the expert's reference to this diagnosis undermines his testimony or reveals a problem with his qualifications.  And, while the DSM does not contain an impairment expressly labeled "bipolar three," it does have three different bipolar-related impairments: Bipolar I Disorder, Bipolar II Disorder, and Bipolar Disorder Not Otherwise Specified.  American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 382-401(4th ed. TR 2000).[2]  I find no reason to discount Dr. Malancharuvil's testimony.

To the extent Plaintiff argues that the ALJ improperly disregarded Dr. Malancharuvil's

---

[2]  Although a new Fifth Edition of the DSM is now available, the Fourth Edition, Text Revision was in use at the time of the hearing.

testimony, Pl.'s Op. Brief at 5, Plaintiff does not point to a particular part of the ALJ's decision or to a particular opinion of Dr. Malancharuvil's that the ALJ rejected. Id. at 4-5. She suggests that the ALJ substituted his own opinion for the expert's testimony by making his own independent medical findings and speculative inferences from the medical evidence but she fails to be specific.

Dr. Malancharuvil opined that Plaintiff had no limitations in activities of daily living from a psychiatric standpoint, mild to moderate limitations in social functioning, and a mild to moderate limitation in her "[a]bility to function, persistence or pace[.]" Tr. 47. He also opined that she had "some meaningful limitations with regard to work." Id. Although she retained the capacity for moderately complex tasks in an object-oriented setting, and no significant limitations in ordinary commonplace actions with coworkers or supervisors, she should not be working with people in jobs such as a receptionist or human resource personnel. Tr. 47-48.

The ALJ gave Dr. Malancharuvil's opinion "some weight," by accepting much of Dr. Malancharuvil's opinion but concluding that she had only mild limitations in social functioning and concentration, persistence, and pace as opposed to the mild to moderate limitation assessed by Dr. Malancharuvil. Tr. 24. The ALJ noted that Plaintiff was able to function outside of her home and cited her shopping in stores and going out on dates as examples. Id. He further noted that she cared for her father, husband, and children. Id. Finally, he noted that Plaintiff was able to concentrate for extended periods of time while using a computer. Tr. 25.

Plaintiff fails to show that the ALJ erred in relying on these facts in the record to support his rejection of a moderate limitation in social functioning or in the areas of concentration, persistence, and pace.

14 - OPINION & ORDER

B.  Unspecified Treating & Examining Physicians

Next, Plaintiff makes a blanket statement that the "ALJ improperly rejected [] all of the opinions and ultimate conclusions of Claimant's treating and examining physicians concerning the severity of claimant's impairments, without stating clear and convincing reasons nor specific and legitimate reasons supported by substantial evidence in the record for doing so."  Pl.'s Op. Brief at 5.

As Defendant notes, however, the ALJ found that the record contained no opinions by acceptable medical sources that Plaintiff had limitations associated with either her physical or mental impairments.  Tr. 23-24 ("no acceptable medical courses in the record has provided any functional limitations associated with the claimant's physical impairments"; other than Dr. Malancharuvil, "no other acceptable medical source in the record has opined that the claimant was more limited prior to her date of last insured due to her mental impairments").

I reject Plaintiff's argument because she fails to identify any particular opinion or conclusion of a treating or examining acceptable medical source that the ALJ allegedly improperly rejected.

C.  Judith Blum

Judith Blum is a case manager with the Oregon Department of Human Services, Self Sufficiency Program.  Tr. 441.  In a November 23, 2011 letter, she reported that Plaintiff was in a long term domestic violence marriage until June 2010.  Id.  Because Plaintiff, according to Blum, had never worked and was financially dependent on her abusive husband, she had been unable to leave him until the State of Oregon Child Protective Services forced her husband out of the home.  Id.  Plaintiff tried to do a motel housekeeping job, which lasted less than one month.  Id.

She also tried to work as a classroom aide for Head Start, a job that also lasted less then one month.  Id.  Blum wrote that Plaintiff is unable to understand letters and notices written at a sixth-grade level.  Id.

Blum stated that because of Plaintiff's mental health and dependency issues, Plaintiff is unable to maintain relationships, forcing her to constantly search for a new place to live.  Id.  She is unable to manage her finances.  Id.  She has been abused a number of times and based on her long history of domestic violence in her marriage, she accepts this as normal.  Id.  In Blum's opinion, this is a significant indication of Plaintiff's mental health issues.  Id.

Blum stated that Plaintiff appeared to be low functioning and childlike in nature.  Id.  She is polite, but is easily upset and distracted and her conversation is hard to follow.  Id.  Finally, Blum opined that Plaintiff would be unable to hold a job even in a highly structured and supported environment.  Id.  She has difficulty learning and retaining information and staying on task.  Id.  She also has difficulty with daily decision-making skills and activities of daily living.  Id.

The ALJ discussed Blum's opinion, but noted first that because she was not an acceptable medical source, he was not required to weigh the opinion against those of the acceptable medical sources in the record.  Tr. 25.  He also found that her opinion was inconsistent with the overall evidence.  Id.  As an example, the ALJ noted that Blum's opinion was partially based on Plaintiff's inability to understand letters and notices written at a sixth-grade level.  Id.  But, the ALJ explained, this basis was contradicted by Plaintiff having completed a two-year college degree in business administration.  Id.

Plaintiff argues that the ALJ improperly rejected Blum's testimony.  Pl.'s Op. Brief at 5.

16 - OPINION & ORDER

But, she provides no reason to support this argument other than to state that Blum had observed Plaintiff and attempted to help her.  Id.

The ALJ correctly determined that Blum, as a social welfare agency employee, was not an acceptable medical source but is an "other source."  20 C.F.R. §§ 404.1513(a), 404.1513(d)(3).  Under Ninth Circuit law, evidence from "other sources" is considered  under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness.  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (because physician's assistant was not an acceptable medical source, ALJ could discount physician's assistant's opinion for germane reasons); Dale v. Colvin, No. 03:13-cv-01187-HZ, 2014 WL 1917980, at *7 (D. Or. May 13, 2014) (because nurse practitioner was an "other source," ALJ could reject opinion for germane reasons); see also Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses).

Testimony which is inconsistent with other evidence in the record is an appropriate reason "germane" to the lay witness for discounting that testimony.  As the ALJ noted, Blum's statement about Plaintiff's ability to understand letters and notices at a sixth-grade level is inconsistent with her education level.  Also, while Blum stated that Plaintiff had never worked, she obviously worked enough over the years to qualify for DIB under Title II.  E.g., Tr. 182 (showing earnings from various years beginning in 1984 through 2008).  The ALJ did not err in rejecting Blum's testimony.

V.  GAF Scores and the "A and B Criteria"

Plaintiff complains that the ALJ ignored evidence from nurse practitioners at Klamath

17 - OPINION & ORDER

Open Door Family Practice and from therapists at Lutheran Family Services which Plaintiff

contends shows the severity of her mental health conditions.  Pl.'s Op. Brief at 4.  The only

specific evidence she mentions, however, are "GAF scores" which she argues indicate her

disabling conditions.  Id.  She provides no citation to the record and no legal authority in support

of her argument.

       The ALJ noted a March 2006 Global Assessment of Functioning (GAF) score of 60 by a

physician's assistant, and another of 47 in July 2008 by a nurse practitioner.  Tr. 21.  The ALJ

acknowledged that such scores indicate the presence of serious psychiatric symptoms or

impairment in functioning.  Id.  But, the ALJ determined that the scores were not supportive of a

severe mental impairment for two reasons.  Id.  First, the ALJ noted that the Commissioner does

not endorse GAF scores because they have no direct correlation to the severity requirements of

the mental disorders listings.  Id.  Second, he noted that the scores were assessed by non-

acceptable medical sources and were not supported by the generally normal mental status

examinations in the record before the Plaintiff's date of last insured.  Tr. 22.  As an example, the

ALJ cited to the nurse practitioner's notations that while Plaintiff had a distracted concentration,

she was euthymic with a broad, pleasant, and bright affect, intact memory, normal thought

process and content, and no signs of suicidal or homicidal ideation.  Id.  The ALJ also cited to the

physician's assistant's notations that Plaintiff was alert and cooperative, had normal

concentration, memory, thought process, and content, and had no suicidal or homicidal ideation.

Id.

       Putting aside the issue of Defendant's position on the relevance of GAF scores to a

determination of the severity of an impairment, Plaintiff fails to establish that the ALJ erred by

18 - OPINION & ORDER

concluding that the GAF scores did not support the claimed severity of her impairments. The ALJ cited portions of the record which undermined the assessed GAF scores. Plaintiff does not challenge the facts in the underlying record. The ALJ's determination that the scores did not support Plaintiff's claimed severe symptoms was not error.

The other criticism Plaintiff makes regarding the ALJ's treatment of the nurse practitioner and therapist evidence is that the ALJ ignored the "A and B" criteria of the 12.04, 12.06, and 12.08 listings regarding manic and depressive episodes. Pl.'s Op. Brief at 4.

Listings 12.04, 12.06, and 12.08 are three of the several mental disorder listed impairments contained in 20 C.F.R., Part 404, Subpart P, Appendix 1. Listing 12.04 addresses affective disorders; Listing 12.06 addresses anxiety related disorders; and Listing 12.08 addresses personality disorders. To satisfy the severity criteria of each listing, the claimant must meet both the A and B criteria or the A and C criteria. While the A criteria for each of the three listings at issue here vary, the B and C criteria are the same. The B criteria require the claimant to establish two of the following four restrictions: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of an extended duration. 20 C.F.R., Part 404, Subpart P, App. 1, Listings 12.04, 12.06, 12.08; see also 20 C.F.R. §§ 1520a(c)(3).

Even if Plaintiff is correct that the ALJ ignored the A criteria for these listings[3], the ALJ expressly discussed the B criteria and concluded that Plaintiff did not meet her burden of

---

[3]  While the ALJ's opinion does not appear to identify a particular section devoted to the discussion of the A criteria, the entire decision can be understood as a discussion of some, if not all, of the A criteria for these three listings.

establishing them.  The ALJ stated that because Plaintiff had medically determinable mental

impairments, he considered the "four broad functional areas set out in the disability regulations

for evaluating mental disorders[.]" Tr. 25.  He added: "These four broad functional areas are

known as the 'paragraph B' criteria."  Id.  He then went through the analysis, concluding that

because Plaintiff's mental impairments caused no more than mild limitation in any of the first

three "B" criteria and because there were no episodes of decompensation which had been of

extended duration, the "B criteria were not met.  Plaintiff's argument that the ALJ ignored the B

criteria with regard to manic and depressive episodes is unfounded.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this ____ day of _____, 2014

Marco A. Hernandez
United States District Judge

20 - OPINION & ORDER